**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **SJOCKIA D. JOHNSON,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** |
| | **5:24-cv-00208-TES** |
| **OCONEE CENTER COMMUNITY** | |
| **SERVICE BOARD,** | |
| *Defendant.* | |

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION TO DISMISS**

In this case, Plaintiff Sjockia D. Johnson, represented by counsel, is suing her former employer, Defendant Oconee Center Community Service Board ("Oconee Center"). Broadly speaking, she claims that Oconee Center terminated her employment after she made a report of sexual harassment and disclosed some of its billing practices that she believed to be illegal.

First, Plaintiff asserts claims for gender discrimination, retaliation, and sexual harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"). Then, in addition to alleged violations of the Equal Protection Clauses from the United States and Georgia Constitutions, Plaintiff tacks on a claim alleging that her termination violated the Georgia Whistleblower Act. Relying mainly on the basis that her Complaint [Doc. 1] fails to state a claim upon which relief may be granted, Oconee Center filed a

Motion to Dismiss [Doc. 5] arguing that the case should be dismissed in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). [Doc. 5, p. 1]; [Doc. 5-1, p. 1].

Before getting to the substance of Oconee Center's Motion, the Court briefly pauses to note that Plaintiff's Complaint abounds with pleading issues, offering stress-free target practice for easy-to-avoid deficiencies. For the Court to specifically address each and every one of those problems would be a waste of judicial resources. But, where necessary, the Court certainly notes and discusses many of the obvious snags that cause so many problems for Plaintiff's claims.[1] When it comes to "factual allegations," her Complaint, as you'll soon see, is a tad bare save for her many legal conclusions. This, of course, caused Oconee Center and the Court to pull many factual allegations from her verified Charge of Discrimination [Doc. 5-2] to grasp a more complete picture of what allegedly happened in this case.

## FACTUAL BACKGROUND

Spread across her Complaint and her EEOC charge, Plaintiff alleges the

---

[1] Factual allegations from Plaintiff's Complaint are assumed to be true and any reasonable inferences that may be drawn from them are construed in the light most favorable to her. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even though Plaintiff didn't attach her charge filed with the Equal Employment Opportunity Commission ("EEOC") to her Complaint, Oconee Center filed it as an exhibit to its Motion. *See, e.g.*, [Doc. 5-2]. Since it's central to her claims and neither she nor Oconee Center challenge its authenticity, there's no reason why it can't be considered by the Court. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling upon a motion to dismiss, [a] district court may consider an extrinsic document if it is (1) central to [a] plaintiff's claim, and (2) its authenticity is not challenged."); *Chesnut v. Ethan Allen Retail, Inc.*, 971 F. Supp. 2d 1223, 1228–29 (N.D. Ga. 2013) (considering EEOC charge to determine timeliness of filing without converting to motion for summary judgment) (collecting cases).

following facts in support of her claims. Towards the end of 2021, Milledgeville-based Oconee Center hired Plaintiff as a Social Services Technician/Group Facilitator for its Developmental Disabilities Department. [Doc. 1, ¶¶ 1, 3, 19]. Plaintiff provides no job description or anything to flesh out exactly what she used to do for Oconee Center. "Shortly after," in March 2022, a man by the name of Reginald Rogers became Oconee Center's chief executive officer and "began making frequent unwanted sexual advances to [Plaintiff]." [*Id.* at ¶ 20]; [Doc. 5-2, p. 2]. Other than her allegation that they were "frequent" and "unwanted," Plaintiff's Complaint doesn't provide any further information or detail about the sexual advances. Her EEOC charge, however, gives a little more. Through what Plaintiff characterizes as a "pattern of severe and pervasive discrimination and harassment," she claims that Rogers would come into her classroom and tell her: "Those scrubs look good on you," "You are beautiful," and "I want you to come to my house so I can take you out." [Doc. 5-2, p. 2]. Plaintiff alleges that she "immediately rebuffed" those advances and expressed her discomfort with Rogers' behavior. [*Id.*]. Apparently, Rogers threatened her employment if she did not "engage in sex acts" with him and said that he would tell people that "she was a liar" if she accused him of sexual harassment or misconduct. [Doc. 1, ¶¶ 23–24].

When Rogers allegedly continued to harass Plaintiff by making sexual advances and contacting her on her personal cell phone, she reported his behavior to Oconee Center's human resources on August 10, 2022. [*Id.* at ¶ 25]; [Doc. 5-2, p. 5]. From

Plaintiff's EEOC charge, it appears that she recorded some of her conversations with Rogers. [Doc. 5-2, p. 2]. Not only did she play those recordings during her meeting with human resources, but she also claims that she "provided a detailed description of the sexual harassment." [*Id.*].

Following this singular report to human resources, Plaintiff's Complaint says that Oconee Center "began retaliating against [her] by falsely accusing her of policy violations and adding job duties to the scope of her responsibilities." [Doc. 1, ¶¶ 25–26]. Notwithstanding this rather vague allegation, Plaintiff (again) leaves it to her EEOC charge to do much of the heavy lifting when it comes to providing a precursory glimpse into the facts of her case. For example, on December 22, 2022, Oconee Center apparently made a baseless allegation that Plaintiff "was somehow driving inappropriately in . . . Oconee Center's parking lot." [Doc. 5-2, p. 2]. Also, in the EEOC charge, Plaintiff claims that after she reported Rogers' behavior to human resources, her supervisor and the clinical director for Oconee Center assigned her two new job tasks—"changing the patients['] diapers and picking up the patients." [*Id.*]. Even though Plaintiff says that she wasn't properly certified to perform either task, she states they forced her to do them "under threat of losing [her] job." [*Id.*]. Then, at some point after her report to human resources, Plaintiff asserts that Rogers "escalated his discriminatory and harassing behavior" by coming into her classroom and adjusting the cameras so that his harassing behavior couldn't be recorded. [*Id.*]. In sum, Plaintiff claims that she

"continue[d] to be subjected to a severe and pervasive hostile work environment" and that Oconee Center failed to take remedial action. [*Id.*].

On March 14, 2023, Plaintiff filed her EEOC charge alleging that Rogers' conduct and Oconee Center's response to her report about Rogers amounted to sex discrimination, harassment, and retaliation.[2] [*Id.*]; [Doc. 1, ¶ 27]. The EEOC issued Plaintiff a notice of right to sue on April 2, 2024, and just over two months later—on June 6, 2024—Oconee Center terminated her employment for "allegedly creating a disturbance, being rude, or otherwise acting inappropriately after her supervisor shared her personal cell number with a patient." [Doc. 1, ¶¶ 30–31]. Based on these facts, Plaintiff filed suit on July 1, 2024, seeking damages against Oconee Center. [Doc. 1, pp. 12–13].

## DISCUSSION

### A.    Legal Standards

#### 1.    Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), a party may move to dismiss a complaint for lack of subject-matter jurisdiction. "If [a] court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." Fed. R. Civ. P. 12(h)(3). Attacks on subject-matter jurisdiction come in two forms: (1) facial attacks and (2) factual attacks. *Lawrence*

---

[2] According to Plaintiff's Complaint, she submitted additional information to the EEOC in December 2023 and January 2024 that Oconee Center asked her "to create fraudulent billing documentation" on several occasions. [Doc. 1, ¶ 29].

*v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

"A motion to dismiss asserting the defense of Eleventh Amendment immunity presents a challenge to the [C]ourt's [subject-matter] jurisdiction." *Baker v. Univ. Med. Serv. Ass'n*, No. 8:16-CV-2978-T-30MAP, 2016 WL 7385811, at *1 (M.D. Fla. Dec. 21, 2016); *see also Thomas v. U.S. Postal Serv.*, 364 F. App'x 600, 601 (11th Cir. 2010) (citing *Bennett v. United States*, 102 F.3d 486, 488 n.1 (11th Cir. 1996) ("[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists.")).

### 2.    Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion under Rule 12(b)(6), it is a cardinal rule that district courts must accept the factual allegations set forth in a complaint as true. *Twombly*, 550 U.S. at 572. In accepting the factual allegations as true, courts are to construe the reasonable inferences from them in the light most favorable to a plaintiff. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

However, through Rule 12(b)(6), a defendant may "test the facial sufficiency" of a complaint by way of a motion to dismiss. *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023) (quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997)). Such a "motion is an 'assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint still fails as

a matter of law to state a claim upon which relief may be granted.'" *Barreth v. Reyes 1, Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation omitted). However, a complaint will survive a Rule 12(b)(6)-based motion if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft*, 556 U.S. at 678–79).

Now, whether a complaint states a claim for relief is measured by reference to the pleading standard of Federal Rule of Civil Procedure 8—a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Barreth*, 2020 WL 4370137, at *2 (citation omitted). Rule 8 doesn't require detailed factual allegations, but it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough*, 907 F.3d at 1333 (citation omitted) (alterations adopted). Its sole purpose is to provide a defendant "with 'fair notice' of the claims and the 'grounds' for entitlement to relief." *Barreth*, 2020 WL 4370137, at *2 (citation omitted); *Twombly*, 550 U.S. at 555–56.

To decide whether a complaint survives a motion to dismiss, courts use a two-step framework. *McCullough*, 907 F.3d at 1333 (citation omitted). The first step is to identify the allegations that are "no more than conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* After disregarding the conclusory allegations, the second step is to "assume any remaining

factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* "A court decides whether [Rule 8's pleading standard] is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow [it] to reasonably infer that [a] plaintiff [may be] entitled to the legal remedy sought." *Barreth*, 2020 WL 4370137, at *2 (citation omitted).

When drafting a complaint, "[a] plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (quoting *Twombly*, 550 U.S. at 555). A plaintiff may use legal conclusions to structure a complaint, but they "must be supported by factual allegations." *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in a complaint as true, they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss "is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The issue is not whether the claimant will

ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Id.* The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[ ] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555. Finally, and in this case, critically, a complaint that tenders "'naked assertions' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (cleaned up). To survive, a complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

**B.**    **Plaintiff's Title VII Claims**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Employers are also prohibited from retaliating against "any . . . employee[ ] . . . because [s]he has opposed any practice made an unlawful employment practice" by Title VII, "or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Id.* at § 2000e-3(a).

In the first three counts of her Complaint, Plaintiff asserts Title VII-based claims for sex discrimination, retaliation, and sexual harassment. [Doc. 1, pp. 6–10]. To

establish a prima facie case of sex discrimination under Title VII, a plaintiff must prove:

(1) she is a member of a protected class; (2) she was subjected to adverse employment

action; (3) her employer treated similarly situated employees who are not members of

the plaintiff's class more favorably; and (4) she was qualified for the job. *Rice-Lamar v.*

*City of Ft. Lauderdale*, 232 F.3d 836, 842–43 (11th Cir. 2000). When it comes to a

discrimination claim, the Eleventh Circuit has made itself quite clear that an employee

doesn't have to plead a prima facie case in the complaint, and to be clear, Oconee

Center doesn't argue that Plaintiff had to and failed to do so here. *See Davis v. Miami-*

*Dade Cnty.*, No. 23-12480, 2024 WL 4051215, at *3 (11th Cir. Sept. 5, 2024). To the point,

an employee doesn't have to plead her comparator—someone who is similarity situated

in all material respects—in her complaint. *Id.*; *Lewis v. City of Union City*, 918 F.3d 1213,

1224 (11th Cir. 2019) (en banc).

 As for sexual harassment cases, there are two types: (1) quid pro quo cases which

are based on carried-out threats and (2) hostile work environment cases which are

based on "bothersome attentions or sexual remarks that are sufficiently severe or

pervasive to create a hostile work environment." *Dunn v. Smith & Sons, Inc.*, No. 5:19-cv-

00502-TES, 2021 WL 744156, at *7 (M.D. Ga. Feb. 25, 2021) (citation omitted); *see also*

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998). "Quid pro quo sexual

harassment occurs when an employer alters an employee's job conditions as a result of

the employee's refusal to submit to sexual demands." *Steele v. Offshore Shipbuilding, Inc.*,

867 F.2d 1311, 1315 (11th Cir. 1989) (citation omitted). The second type of sexual

harassment case takes the form of a hostile work environment case which is, of course,

also actionable under Title VII. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th

Cir. 2016) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)). "Hostile

environment sexual harassment occurs when an employer's conduct 'has the purpose

or effect of unreasonably interfering with an individual's work performance or creating

an intimidating, hostile, or offensive environment.'" *Steele*, 867 F.2d at 1315 (citation

omitted). To establish a prima facie case for a hostile work environment claim, Plaintiff

must show

> (1) that [s]he belongs to a protected group; (2) that [s]he has been subject to
> unwelcome harassment; (3) that the harassment must have been based on
> a protected characteristic of the employee, such as [sex]; (4) that the
> harassment was sufficiently severe or pervasive to alter the terms and
> conditions of employment and create a discriminatorily abusive working
> environment; and (5) that the employer is responsible for such environment
> under either a theory of vicarious or of direct liability.

*Dunn*, 2021 WL 744156, at *8 (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269,

1275 (11th Cir. 2002)). Then, to make a prima facie case for a claim of retaliation under

Title VII, a plaintiff must first show (1) that "she engaged in statutorily protected

activity," (2) that "she suffered an adverse action," and (3) "that the adverse action was

causally related to the protected activity." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d

1121, 1134 (11th Cir. 2020) (en banc).

    With all of that in mind, the relevant inquiry in assessing a complaint's

allegations through a Rule 12(b)(6) lens is whether there is enough factual heft to nudge claims from the "conceivable" category to the "plausible" one. *Twombly*, 550 U.S. at 557, 570. To be consistent with *McCullough*'s two-step framework, the Court identified and discarded everything from Plaintiff's Complaint and her EEOC charge that amounts to nothing more than a conclusory allegation masquerading as fact. 907 F.3d at 1333. Then, with whatever *factual allegations* that remained, the Court, of course, accepted those as true to determine whether they give rise to *plausible* claims that "unlock the doors of discovery." *Id.*; *Iqbal*, 556 U.S. at 678–79. Remember, though, pleading "a formulaic recitation of the elements of a cause of action" is never enough. *McCullough*, 907 F.3d at 1333 (quoting *Twombly*, 550 U.S. at 555).

To highlight just a few, the Court (in accordance with *McCullough*) disregarded the following legal conclusions that were improperly presented as factual allegations:

- That Rogers' alleged sexual advances may have been "unwanted" or "unwelcome" and "frequent," *see Miller*, 277 F.3d at 1276,

- That what allegedly happened was "severe [or] pervasive," *see id.* at 1275,

- That Oconee Center took "adverse employment actions" against her, *Rice-Lamar*, 232 F.3d at 842–43, and

- That everything that allegedly happened to her all "amounted to sex discrimination, retaliation, and sexual harassment"

*See, e.g.*, [Doc. 1, ¶¶ 20, 27, 33, 48, 59]; [Doc. 5-2, p. 2]. Legal conclusions like these and many others scattered throughout Plaintiff's Complaint are not entitled to the presumption of truth. *McCullough*, 907 F.3d at 1333. There's no denying that Plaintiff's

Complaint has its problems when it comes to the fact that Rule 8 requires "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *Id.* However, before the Court wades through what is and isn't sufficient to support Plaintiff's claims, it must first address one glaring issue raised by Oconee Center in its Motion.

### 1.    Title VII's Time Bar and EEOC Exhaustion

Suing under Title VII requires an aggrieved employee to first exhaust the federal administrative remedies by filing a charge of discrimination with the EEOC. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). Plaintiff has done so in this case. *See, e.g.*, [Doc. 5-2]; [Doc. 1, ¶¶ 27–30]. Although "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court," it is, however, a statutory requirement. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 398 (1982). In Georgia, however, because it is a non-deferral state,[3] only those claims arising within 180 days of the filing of a charge are actionable under Title VII. *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002)). Put differently, the 180-day period is by all

---

[3] "Non-deferral states" are those states without any laws banning various types of discrimination in the workplace and without a state entity authorized to grant or to seek relief for victims of such discrimination. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1100 n.20 (11th Cir. 1996); *Wilkerson*, 270 F.3d at 1317 (discussing that for a charge regarding discrimination under Title VII "to be timely in a non-deferral state such as Georgia, it must be filed within 180 days of the last discriminatory act[ ]"); *Sheffield v. United Parcel Serv., Inc.*, 403 F. App'x 452, 454 n.2 (11th Cir. 2010) (quoting *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1214 n.2 (11th Cir. 2001)) (recognizing that "Georgia is a non-deferral state because it is without 'laws banning age discrimination in employment and without state entities authorized to grant or seek relief for victims of age discrimination[ ]'").

accounts akin to a statute of limitations that prevents litigation about "'stale' claims." *Zipes*, 455 U.S. at 393–94.

Here, Plaintiff clearly alleges that she filed her charge of discrimination with the EEOC on March 14, 2023. [Doc. 1, ¶ 27]; [Doc. 5-2, p. 2]. The law is clear that discrete discriminatory acts such as "termination, failure to promote, denial of transfer, or refusal to hire are [all] easy to identify" and if "untimely filed" are "no longer actionable." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114–15. Looking closely at Plaintiff's Complaint and her EEOC charge, there aren't any "discrete acts" that took place before her 180-day cut-off—September 15, 2022. *Id.* at 114; [Doc. 5-1, pp. 5–6]. Aside from her eventual termination date on June 6, 2024, Plaintiff's allegations are composed of Rogers' comments and actions and human resources' response to them over a particular stretch of time *before* September 15, 2022. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 117; [Doc. 1, ¶ 31]. That said, Plaintiff's case isn't as cut and dry as the simple discrete-act lawsuit in which an employee claims she was fired or wasn't given a promotion because of some characteristic protected by Title VII. In her Response [Doc. 7], Plaintiff reiterates that the first three counts of her Complaint "assert Title VII claims related to sexual harassment, a hostile work environment, and adverse employment actions taken against her following her report of sexual harassment in August 202[2], up to and including the discrete act of termination of her employment, which occurred on June 6, 2024." [Doc. 7, p. 6]; [Doc. 1, ¶¶ 25, 31].

As you can probably tell, "[h]ostile environment claims are different in kind from discrete acts." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115. They are "composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). Therefore, "[i]t does not matter, for purposes of [Title VII], that some of the component acts of the hostile work environment fall *outside* the statutory time period." *Id.* (emphasis added). However, at least one alleged act contributing to a hostile work environment claim must occur *within* the filing period. *Id.* ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."). If an employee can provide an allegation of unlawful or harassing conduct that is within the 180-day cut-off, then everything that encompasses what the employee considers to be the "hostile environment" may be considered. *Id.*

Plaintiff's allegations from her Complaint and her EEOC charge make clear that everything Rogers either allegedly said or did to her occurred prior to September 15, 2022. [Doc. 1, ¶¶ 20–25]. Following Plaintiff's report to Oconee Center's human resources on August 10, 2022, her Complaint does not offer any further allegation about Rogers.[4] [*Id.* at ¶ 26]. In other words, Plaintiff does not supply a single factual allegation

---

[4] Plaintiff's EEOC charge, on the other hand, alleges that "[s]oon after" she reported Roger's conduct to human resources that he began to retaliate against her by threatening her job. [Doc. 5-2, p. 2]. However, such a vague, unspecified allegation doesn't provide Oconee Center or the Court with any chance of

that occurred *within* 180 days of the date she filed her EEOC charge that would allow the Court to consider all of her allegations against Rogers in connection to a hostile work environment claim. Without at least one alleged act *within* the 180-day period, the Court cannot reach outside it to consider other unexhausted allegations. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 117.

Importantly, with respect to her hostile work environment claim, Plaintiff's ability to amend her EEOC charge to include something about Rogers *within* the 180 days is no longer available. If, let's say, Rogers continued with his alleged actions and unwelcome commentary after September 15, 2022, Plaintiff could've certainly included that in her EEOC charge, or she should've amended her charge if he did something after she filed it on March 14, 2023. [Doc. 1, ¶ 27]. Had Rogers continued to act as Plaintiff alleged at any point past September 15, 2022, she had *ample opportunity* to make that known to the EEOC before it issued its notice of right to sue on April 2, 2024. [*Id.* at ¶ 30]; *Butler v. Grief*, No. 1:07-CV-1978-ODE, 2008 WL 11424203, at *4 (N.D. Ga. Sept. 26, 2008); *see also Hazeur v. Fed. Warranty Serv. Corp.*, No. Civ.A.99-3156, 2000 WL 365013, at *2 (E.D. La. Apr. 7, 2000) (holding that a plaintiff's amendment to her EEOC discrimination charge does not relate back where the EEOC issued a right to sue notice, the EEOC terminated its processing of the charge, and a suit was initiated); *Reynolds v.*

---

discerning whether this occurred within the 180-day cut-off. Even if this allegation is within the 180 days, it seems logical—based on Plaintiff's EEOC charge—it would lend support to her retaliation claim as opposed to her hostile work environment claim.

*Solectron Global Serv.*, 358 F. Supp. 2d 688, 693 n.9 (W.D. Tenn. 2005) (noting in dicta that a plaintiff cannot amend an EEOC charge where the notice of right to sue issued and no charge was pending that could be amended).

After all, an employee's complaint for a Title VII lawsuit is "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). Since each of Plaintiff's allegations of harassing behavior occurred prior to September 15, 2022, they are—notwithstanding Plaintiff's pleading issues easily highlighted by *Twombly*, *Iqbal*, and *McCullough*—not actionable. *Joe's Stone Crabs*, 296 F.3d at 1271 (citation omitted); [Doc. 5-1, pp. 8–9]. Consequently, Plaintiff's sexual harassment and hostile work environment claims stand to be **DISMISSED with prejudice**.[5]

At the close of her arguments for her Title VII claims (and others), Plaintiff "requests the opportunity to amend her complaint" to ostensibly try and save her sexual harassment and hostile work environment claims. [Doc. 7, p. 11]. However, because Plaintiff "embedded [her] request in [her] opposition brief and did not file a motion for leave to amend, [her] request for leave to amend [is] not properly before the [C]ourt." *Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, 93 F.4th 1315,

---

[5] "If a dismissal without prejudice 'has the effect of precluding [a] plaintiff from refiling [her] claim due to the running of the statute of limitations[,] the dismissal is tantamount to a dismissal with prejudice.'" *Justice v. United States*, 6 F.3d 1474, 1481 n.15 (11th Cir. 1993) (cleaned up). Here, Plaintiff would not be able to reassert her allegations for her sexual harassment claim because of the 180-day time bar imposed by the statute. 42 U.S.C. § 2000e-5(e)(1). Accordingly, with respect to Plaintiff's sexual harassment claim, dismissal *with prejudice* is warranted.

1338 (11th Cir. 2024); *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (quoting

*Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999)) ("Where a request for leave

to file an amended complaint simply is imbedded within an opposition memorandum,

the issue has not been raised properly."). "Filing a motion is the proper method to

request leave to amend a complaint." *My24HourNews.com, Inc. v. AT&T Corp.*, 791 F.

App'x 788, 802 (11th Cir. 2019). Simply requesting leave to amend in a response brief, as

Plaintiff has done, is not enough. *Id.* Even if Plaintiff's requested leave to amend could

be seen as proper, any amendment would likely be futile[6] because—from a timing

perspective—she can't change the past in order to save her sexual harassment and

hostile work environment claims.

Next, with respect to Plaintiff's sexual discrimination claim—her allegations that

Oconee Center "did not require males to endure sexual or other harassment, bullying,

or hostility" and "did not punish males for complaining about discrimination or

harassment" by firing them—Plaintiff completely failed to exhaust the federal

administrative remedies. [Doc. 1, ¶¶ 39–40]. As discussed above, termination is

considered a discrete act. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114; [Doc. 7, p. 7

(Plaintiff's admission that her "termination was a discrete act[]")]. To that end, Oconee

---

[6] Despite that Federal Rule of Civil Procedure 15 requires that leave to amend should be given freely, courts may deny leave to amend on numerous grounds, including the futility of the amendment. *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003). Futility justifies the denial of leave to amend where a claim, as amended, would still be subject to dismissal. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (citations omitted).

Center argues that "[t]he United States Supreme Court has made it clear that each new, discrete act of discrimination requires exhaustion of administrative remedies." [Doc. 5-1, p. 7 (citing *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114) ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"))].

"The purpose of the exhaustion requirement is to allow the EEOC the first opportunity to investigate the alleged practices and to perform its role 'in obtaining voluntary compliance and promoting conciliation efforts.'" *Gregory*, 355 F.3d at 1279 (discussing the exhaustion requirement in Title VII actions). The Eleventh Circuit has "cautioned 'that allegations of new acts of discrimination are inappropriate' for a post-charge judicial complaint." *Duble v. FedEx Ground Package Sys.*, 572 F. App'x 889, 892 (11th Cir. 2014) (quoting *Gregory*, 355 F.3d at 1279–80). Here, Plaintiff filed her charge with the EEOC on March 14, 2023, but wasn't terminated until June 6, 2024. [Doc. 1, ¶¶ 27, 31]. Given that Plaintiff's Complaint "is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of [her EEOC charge]," her discrimination claim also stands to be **DISMISSED** for two reasons. First, there is no allegation that Rogers had any hand in the events leading up to her termination. [Doc. 10, p. 2]. Second, and more importantly, with respect to her termination, Plaintiff failed

to file a new charge[7] of discrimination before filing suit.[8] *Id.* This dismissal, however, is

**without prejudice**. *See* n.5, *supra*; *Johnson v. DuBose*, 806 F. App'x 927, 928 (11th Cir.

2020) ("[A] dismissal without prejudice generally does not constitute an abuse of

discretion because the affected party may simply re-file.").

Again, to the extent Plaintiff wants to amend her Complaint, she needed to file a

motion rather than make the request in her brief opposing dismissal. [Doc. 7, p. 11];

*Advance Tr.*, 93 F.4th at 1338; *Rosenberg*, 554 F.3d at 967; *My24HourNews.com*, 791 F.

App'x at 802. That said, Plaintiff correctly notes that she "has 180 days from the [date of

her] termination to file a charge of discrimination" to exhaust it before the EEOC. [Doc.

7, p. 8]. Since Plaintiff may yet still properly exhaust her discrimination claim, dismissal

*without prejudice* is appropriate. *See Duble*, 572 F. App'x at 892–93.

Before turning to Plaintiff's retaliation claim, you may recall that the Court

previously noted a handful of pleading deficiencies—namely the many legal

conclusions that Plaintiff dresses up as "facts" in her Complaint and EEOC charge. The

---

[7] The EEOC issued Plaintiff her notice of right to sue on April 2, 2024; thus, ending the EEOC's involvement with her charge. *See Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1569 (11th Cir. 1996); [Doc. 1, ¶ 30]. In other words, it's unlikely that Plaintiff would be able to amend her charge to include allegations about her termination on June 6, 2024. [Doc. 1, ¶ 31]. Filing a new charge is Plaintiff's only avenue to re-assert her discrimination claim.

[8] Both parties recognize that filing an EEOC charge "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to wavier, estoppel, and equitable tolling." [Doc. 5-1, p. 5]; [Doc. 7, p. 8 n.3 (quoting *Zipes*, 455 U.S. at 393)]. Notwithstanding the ardently clear fact that Oconee Center has no intentions on waiving the requirement, Plaintiff states that Oconee Center "could waive an additional charge of discrimination in the interest of judicial economy and the preservation of resources instead of demanding that a second lawsuit be filed against it." [Doc. 7, p. 8 n.3]. That's not how this works, though. The requirement is there, and Oconee Center is sticking to it.

majority of Plaintiff's many and conclusory "the-defendant-unlawfully-harmed-me accusations" as well as her oft-used "recitation pleading," were in support of her now-dismissed sexual harassment and discrimination claims. *McCullough*, 907 F.3d at 1333. With that, whether her allegations to support those claims meet the applicable Rule 8, *Twombly*, *Iqbal*, and *McCullough* standards warrant no further discussion.

## 2.    Retaliation

Finally, Plaintiff's retaliation claim concerns what she calls a "baseless allegation" about her allegedly "driving inappropriately in the Oconee Center's parking lot" and that she all of a sudden was "forced" to "pick[ ] up the patients" and change their diapers. [Doc. 5-2, p. 2]. Although Oconee Center takes issue with whether Plaintiff suffered a true adverse employment action, the Court finds its arguments unpersuasive at such an early stage given the nature of these new job responsibilities. [Doc. 5-1, p. 10].

On this point, Oconee Center injects something into its briefs that's not mentioned in Plaintiff's EEOC charge or in her Complaint. Oconee Center states that Plaintiff received "*a write-up* for dangerously driving on the property." [Doc. 5-1, p. 10 (emphasis added)]; *see also* [Doc. 10, pp. 4, 6]. Plaintiff, however, never mentions a "write-up." *See* [Doc. 5-2, p. 2]. She only states that "Oconee Center made baseless allegations that [she] was somehow driving inappropriately in the . . . parking lot." [*Id.*]. Oconee Center clearly adds to Plaintiff's allegations to try and get her retaliation claim

tossed on the basis that the Eleventh Circuit has held that "a written reprimand does not constitute an adverse employment action." [Doc. 5-1, p. 10 (citing *Summerlin v. M&H Valve Co.*, 167 F. App'x 93, 97 (11th Cir. 2006))]. To combat this argument, Plaintiff directs the Court to *Muldrow v. St. Louis* in which the Supreme Court recently held that only "some harm" is required for an employee to prevail in a Title VII case. [Doc. 7, p. 10 (citing 601 U.S. 346, 350, 354–55 (2024))]. "What [an employee] does not have to show . . . is that the harm incurred was 'significant' . . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Muldrow*, 601 U.S. at 355. Put simply, there is no requirement in Title VII that the employment disadvantage be "significant," but it, of course, must amount to more than the trivial "petty slights, minor annoyances, and simple lack of good manners" common to the everyday workplace. *Id.* at 357–58.

In its Reply [Doc. 10], Oconee Center argues that *Muldrow* is not applicable because it "dealt with a transfer." [Doc. 10, p. 4]. To that, however, the Court would simply note that the Supreme Court did not limit its holding in *Muldrow* to just "transfers." Looking globally at what Title VII requires, the Supreme Court—yes, in a transfer case—made itself clear that "the statute targets practices that '*treat[ ] a person worse*' because of sex or other protected trait." 601 U.S. at 354 (emphasis added). *Muldrow*, however, as the Eleventh Circuit has already recognized, only dealt with the anti-discrimination provision of Title VII. *West v. Butler Cnty. Bd. of Educ.*, No. 23-10186,

2024 WL 2697987, at *2 (11th Cir. May 24, 2024). The Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White* still controls when it comes to the anti-retaliation provision of Title VII. 548 U.S. 53 (2006).

The anti-retaliation provision provides that "an employer may not take action against an employee for bringing or aiding a Title VII charge." 42 U.S.C. § 2000e-3(a). In *White*, the Supreme Court held that this provision only protects an individual "from retaliation that produces an injury or harm." 548 U.S. at 67–68. Therefore, it must be shown "that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 68 (quoting *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

As one court in the Northern District of Georgia has already noted, *Muldrow* did not, as Plaintiff contends, "change the law with respect to anti-retaliation claims but merely provided additional reasoning as to why the standards" for the anti-discrimination and anti-retaliation provisions "should, and do, differ." *Bailey v. Fulton Cnty. Sch. Dist.*, No. 1:22-CV-2907-MHC-LTW, 2024 WL 4297849, at *4 (N.D. Ga. Aug. 19, 2024). "What the [Supreme] Court in *Muldrow* did was lower the bar for [employees] seeking redress under Title VII for discrimination—not retaliation—and the level of

injury they must show to succeed; it did nothing to change the standard for retaliation claims under Title VII . . . ." *Id.* at *5. Thus, as stated above, a prima facie case for a claim of retaliation under Title VII requires a plaintiff to show that (1) that she engaged in statutorily protected activity, (2) that she suffered an adverse action, and (3) that the adverse action was causally related to the protected activity. *Gogel*, 967 F.3d at 1134–35.

Again, the relevant question is this: Do the allegations nudge Plaintiff's retaliation claim from the "conceivable" category to the "plausible" one. *Twombly*, 550 U.S. at 570. Oconee Center contends that Plaintiff's allegations about a change in job duties is not actionable under Title VII. [Doc. 5-1, p. 10 (citing *Davis v. Town of Lake Park*, 245 F.3d 1232, 1244–45 (11th Cir. 2001)). However, in *Davis*, the Eleventh Circuit did "not suggest that a change in work assignments can never by itself give rise to a Title VII claim." 245 F.3d at 1245. "[I]n unusual instances[,] the change may be so substantial and material that it does indeed alter the 'terms, conditions, or privileges' of employment." *Id.* Here, we have a new job responsibility of changing diapers—likely adult diapers at that. [Doc. 5-2, p. 2]. While the reduced level of harm for Title VII's anti-discrimination provision discussed in *Muldrow* doesn't extend to the anti-retaliation provision, Plaintiff's allegations are arguably enough to show that "a reasonable employee would have found the challenged action materially adverse." *White*, 548 U.S. at 68. That is, of course, if more "hands on" activities were not part of Plaintiff's original job duties as a technician and group facilitator. [Doc. 1, ¶ 19].

24

Further, Oconee Center also argues that Plaintiff "has failed to adequately plead causation on her retaliation claim." [Doc. 10, p. 6]. To establish the causation element for a prima facie case of retaliation, an employee "must show that the relevant decisionmaker was 'aware of the protected conduct[] and that the protected activity and the adverse actions were not wholly unrelated.'" *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013) (quoting *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)). "Close temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.'" *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). This "temporal proximity" "must be 'very close.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (holding that a 3- to 4-month disparity between the protected expression and the adverse employment actions is not sufficient to establish temporal proximity). By all accounts, more and more, the case law in the Eleventh Circuit chalks causation up to a summary-judgment inquiry.

Still though, in an effort to procure dismissal of Plaintiff's retaliation claim, Oconee Center notes that she doesn't provide a single date regarding the change in job responsibilities or any allegation that her supervisor or the clinical director for Oconee Center "ha[d] knowledge of her report to [human resources] in August 2022 or her EEOC charge." [Doc. 5-1, pp. 12–13]; [Doc. 10, p. 5]; *see Gogel*, 967 F.3d at 1135 (quoting *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) ("To establish the necessary

causation, a plaintiff must demonstrate that 'her protected activity was a but-for cause of the alleged adverse action by the employer.'")). Oconee Center isn't wrong to point out Plaintiff's many pleading deficiencies and her glaring factual gaps from her allegations. [Doc. 5-1, pp. 11–12]. They're frustrating, to be sure, and might more appropriately be characterized as chasms. Considering everything the Court's already discussed, it's no secret that a more carefully drafted complaint would've certainly helped, but Plaintiff, despite Oconee Center's arguments, chose to proceed with her Complaint as pled. She neither amended as a matter of course following Oconee Center's Motion nor did she properly seek leave to amend in the midst of briefing. *See* Fed. R. Civ. P. 15(a)(1)(B), (a)(2). Plaintiff was certainly aware that her Complaint suffered from poorly nourished factual allegations because she asked for leave to amend it in her Response, but as the Court has already mentioned, that request wasn't properly raised.

Nevertheless, to survive dismissal, there must only be "a reasonable expectation that discovery will reveal evidence" supporting a claim—a reasonable expectation that Plaintiff's supervisor or the clinical director for Oconee Center "forced" new job responsibilities onto her because they knew about her EEOC charge or her report to human resources. *Twombly*, 550 U.S. at 556; [Doc. 5-2, p. 2]. To dismiss Plaintiff's retaliation claim on a "but-for" causation inquiry without any discovery, may be a step too far even under the scant allegations alleged and known at this point. Eventually,

yes, successful retaliation claims require an employee to show *both* that her employer's reasons for its actions or decisions were false *and* that retaliation was the real reason. *Gogel*, 967 F.3d at 1136. This is no easy burden, and because of that (under the facts of this case, despite the thinness with which Plaintiff presented them) it's an inquiry more aptly suited for summary judgment with a more developed record. Are there important, relative dates missing from the Complaint? Yes. Are there important allegations about who knew what, if anything, missing from the Complaint? Absolutely. But, when construed in the light most favorable to her, there is enough factual "heft" surrounding Plaintiff's retaliation allegations to barely nudge the claim into one of plausibility. *Twombly*, 550 U.S. at 557; *Hawthorne*, 140 F.3d at 1370. That in no way means Oconee Center retaliated against Plaintiff in violation of Title VII, it merely means she is entitled to offer evidence to support her claim. *Scheuer*, 416 U.S. at 236. Accordingly, Oconee Center's Motion as to Plaintiff's retaliation claim is **DENIED**.

## C.    Plaintiff's Claim Under the Georgia Whistleblower Act

In the fourth count of her Complaint, Plaintiff asserts a whistleblower claim pursuant to O.C.G.A. § 45-1-4, *et seq.* [Doc. 1, p. 10]. Relevant to Plaintiff's case, the Georgia Whistleblower Act provides: "No public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule of regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its

truth or falsity." O.C.G.A. § 45-1-4 (d)(2). Simply put, Georgia law provides protection

from retaliation for public employees who truthfully complain about fraud, waste, or

abuse in state programs and operations.

To make out a prima facie case of retaliation under the Georgia Whistleblower

Act, "a public employee must demonstrate that (1) [s]he was employed by a public

employer; (2) [s]he made a protected disclosure or objection; (3) [s]he suffered an

adverse employment action; and (4) there is some causal relationship between the

protected activity and the adverse employment action." *Lamonte v. City of Hampton*, 576

F. Supp. 3d 1314, 1321 (N.D. Ga. 2021) (quoting *Albers v. Ga. Bd. of Regents of Univ. Sys. of

Ga.*, 766 S.E.2d 520, 523 (Ga. Ct. App. 2014)). For purposes of Whistleblower Act

retaliation, an adverse employment action must be "analogous to or of a similar kind or

class as 'discharge, suspension, or demotion.'" *Franklin v. Pitts*, 826 S.E.2d 427, 436 (Ga.

Ct. App. 2019) (quoting O.C.G.A. § 45-1-4(a)(5)).

Here is what Plaintiff alleged in her Complaint with respect to her Whistleblower

Act claim. She alleges she was a public employee. [Doc. 1, ¶ 66]. Next, she alleges that

Oconee Center is a "public employer," and it terminated her employment after she

"disclosed a violation of law committed by [Oconee Center] in regard to requesting that

she create fraudulent billing documentation." [*Id.* ¶¶ 67–69]; [Doc. 10, p. 7]. That is

textbook recitation pleading. *See McCullough*, 907 F.3d at 1333 (quoting *Twombly*, 550

U.S. at 555). And lastly, she alleges that her "termination violated the Georgia

Whistleblower Act." [*Id.* at ¶ 70]. As for her last allegation, there's nothing the Court can do with such a bare naked legal conclusion when it comes to whether she can successfully nudge this claim from conceivable to plausible. *Twombly*, 550 U.S. at 570. If there is some sort of adverse employment action—and there likely is in this case— Plaintiff's allegations are so bareboned that there's no way to connect her termination to her whistleblower disclosure.

Admittedly, "[t]he burden to establish causation under the Whistleblower Act is not high. Georgia courts have explained that '[t]he causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Lamonte*, 576 F. Supp. 3d at 1321 (quoting *Baptiste v. Mann*, 861 S.E.2d 212, 217 (Ga. Ct. App. 2021)). Bottom line, though, is that Plaintiff simply must allege more than what she has. For example, when did she blow the whistle on Oconee Center? Plaintiff, of course, knows the answer to that. Who from Oconee Center knew about it? She likely knows that answer to that as well. Without at least some insight as to these questions, neither the Court nor Oconee Center has any way of knowing whether her whistleblower disclosure related to her termination. For all we know, based off the Complaint as it's drafted, Plaintiff could've disclosed the "alleged violation of law" right after Oconee Center hired her back in 2021. [Doc. 1, ¶¶ 19, 68]. If that's the case, it's unlikely that her termination would be causally related to her disclosure since she remained employed at Oconee Center for

more than two-and-a-half years. [*Id.* at ¶¶ 19, 31, 68]. And again, Plaintiff's brief-imbedded request to amend her Complaint with respect to her claim under the Georgia Whistleblower Act isn't properly raised. [Doc. 7, p. 12]; *Advance Tr.*, 93 F.4th at 1338; *Rosenberg*, 554 F.3d at 967; *My24HourNews.com*, 791 F. App'x at 802.

Rest assured, the Court is ever mindful that Rule 8 only requires "a short and plain statement," but by that same token, a plaintiff must *always* provide enough information, detail, or substance—whatever the word may be—to show her entitlement to relief. Fed. R. Civ. P. 8(a)(1)–(2). It's a thin line, to be sure, between what constitutes acceptable pleading and what doesn't. However, formulaic recitations of elements for a cause of action and "unadorned, the-defendant-unlawfully-harmed-me accusations" will never cut it. *McCullough*, 907 F.3d at 1333; *Twombly*, 550 U.S. at 555. Plaintiff must do more. Since, based on her Complaint, she fails to state a claim under the Georgia Whistleblower Act for the reasons just discussed, that claim is **DISMISSED without prejudice**.

### D. <u>Plaintiff's Equal Protection Claims</u>

In the last two counts of her Complaint, Plaintiff makes claims for equal protection violations under the United States and Georgia Constitutions. [Doc. 1, pp. 11–12].

#### 1. Equal Protection Clause Under the United States Constitution

Via 42 U.S.C. § 1983, Plaintiff alleges in her quintessential conclusionary fashion

that Oconee Center's "sexual harassment of and adverse employment actions against [her] on the basis of sex violate the United States Constitution's Equal Protection Clause."[9] [Doc. 1, ¶¶ 71, 73]. To begin, Title VII claims and claims under the Equal Protection Clause may stand on their own. *Cross v. Alabama*, 49 F.3d 1490, 1507–08 (11th Cir. 1995) (noting that in the context of evaluating the merits of an equal protection claim "[w]hen [§] 1983 is used as a parallel remedy for [a] violation of . . . Title VII . . . , the elements of the two causes of action are the same").

Accordingly, Plaintiff contends that "[t]o state a claim under the Equal Protection Clause, a plaintiff must allege that [s]he is 'similarly situated' to individuals 'who received more favorable treatment[] and [that her] discriminatory treatment was based on some constitutionally protected interest such as [sex]." [Doc. 7, p. 12 (quoting *Walker v. Florida*, No. 1:22cv00133/RH/ZCB, 2023 WL 3306566, at *2 (N.D. Fla. Apr. 3, 2023))]; *see also Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001). Yes, the elements of a sex-based Title VII claim and a sex-based claim brought under the Equal Protection Clause are by and large the same. *See Bryant v. Jones*, 575 F.3d 1281, 1296 n.20, 1307 (11th Cir. 2009). The only difference is that in addition to establishing the elements for a discrimination claim under Title VII, an employee must also allege that her employer was acting under

---

[9] The Court notes, however, when it comes to retaliation, the Eleventh Circuit has long-since recognized that the Equal Protection Clause "does not establish a general right to be free from retaliation." *Watkins v. Bowden*, 105 F.3d 1344, 1355 (11th Cir. 1997) (citing cases); *see also Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989) ("[A plaintiff's] right to be free from retaliation for protesting sexual harassment and sex discrimination is a right created by Title VII, not the equal protection clause.").

color of law and with a discriminatory purpose or intent. *Watkins*, 105 F.3d at 1355.

Easily enough, Plaintiff alleges that Oconee Center is a "public employer," but that's

about all she does. [Doc. 1, ¶ 71].

To be clear, arguments concerning Eleventh Amendment immunity aren't

Oconee Center's main proposition for its Motion with respect to Plaintiff's federal equal

protection claim brought via § 1983, but it raises the issue, nonetheless. [Doc. 5-1, p. 19].

There is, of course, no Eleventh Amendment immunity for a Title VII suit asserted

against a state actor. *Cross*, 49 F.3d at 1502 (citing *Allen v. Ala. State Bd. of Educ.*, 816 F.2d

575, 577 (11th Cir. 1987)). The Eleventh Amendment, however, in most cases—subject to

limited circumstances of abrogation—bars federal courts from entertaining suits against

states. U.S. Const. Amend. XI; *Ass'n for Disabled Ams., Inc. v. Fla. Int'l Univ.*, 405 F.3d 954,

956–57 (11th Cir. 2005) (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). "Under

the traditional Eleventh Amendment paradigm, states are extended immunity, counties

and similar municipal corporations are not, and entities that share characteristics of

both require a case-by-case analysis." *United States ex rel. Lesinski v. S. Fla. Water Mgmt.*

*Dist.*, 739 F.3d 598, 601 (11th Cir. 2014) (citing *Mt. Healthy Cnty. Sch. Dist. Bd. of Educ. v.*

*Doyle*, 429 U.S. 274, 280 (1977)). In the Eleventh Circuit, this case-by-case analysis is

conducted by applying the factors set out in *Manders v. Lee*, 338 F.3d 1304, 1308–09 (11th

Cir. 2003). Thus, because Oconee Center admits that it will have to "establish[] [its] 'arm

of [the] state' status," its claim of Eleventh Amendment immunity is a question for

another day depending, of course, whether Plaintiff properly amends her Complaint.

[Doc. 5-1, p. 19]; Fed. R. Civ. P. 15(a)(2).

For now, though, Oconee Center is correct in that the Supreme Court has "rejected the use of the doctrine of respondeat superior" when it comes to local or municipal government liability. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121–22, 127 (1988). "The Supreme Court has placed strict limitations on municipal liability under § 1983." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). "Such a body may . . . be sued directly ***if it is alleged*** to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 121 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)) (emphasis added). Or, "§ 1983 also authorizes suit 'for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official [decision-making] channels.'" *Id.* (quoting *Monell*, 436 U.S. at 690–91). Yes, that's a lot to unpack, and what does it mean for Plaintiff's federal equal protection claim? First and foremost, to sue a local governmental entity, certain *allegations* must be truthfully asserted. *City of St. Louis*, 485 U.S. at 122, 127; *see also* [Doc. 10, p. 8]. Again, we're looking for factual allegations that nudge a claim from "conceivable" to "plausible." *Twombly*, 550 U.S. at 570.

Here, when it comes to her federal equal protection claim, there are none. Be it with respect to "an official 'custom' or 'policy'" or a single allegation about the

existence of "widespread discriminatory practices of state officials" that essentially have "the force of law," Oconee Center argues that Plaintiff alleges no facts supporting her federal equal protection claim. [Doc. 5-1, p. 17]; *Monell*, 436 U.S. at 690–91; *City of St. Louis*, 485 U.S. at 122, 127. Plaintiff counters Oconee Center's position by arguing that it "fails to address paragraph 72 of the [C]omplaint, which *specifically incorporates* paragraphs 19–65 of the [C]omplaint." [Doc. 7, p. 12 (emphasis added)]. Well, that's the problem.

Without a doubt, Plaintiff's Complaint—especially for her equal protection claims—commits the "mortal sin of re-alleging all preceding counts." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322 (11th Cir. 2015); *see, e.g.*, [Doc. 1, ¶ 72]. Not only that, but she—as Oconee Center argues—provides nothing by way of a factual allegations to hold Oconee Center liable (as a state actor) for an alleged violation of the Equal Protection Clause under the United States Constitution "on the basis of sex." [Doc. 1, ¶ 73]. Accordingly, Plaintiff's federal equal protection claim asserted via § 1983 is **DISMISSED without prejudice** for failure to state a claim.[10]

---

[10] Although the Court didn't dismiss Plaintiff's federal equal protection claim on shotgun pleading grounds, it notes that "[w]hen a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give [her] one chance to replead before dismissing [her] case with prejudice on non-merits shotgun pleading grounds." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018). Even if Plaintiff had included some factual allegations— well, any, for that matter—to support of her federal equal protection claim, the Court would have still deemed her pleading practices as impermissible and would have given her the opportunity to replead. For now, though, Plaintiff's federal equal protection claim is dismissed without prejudice unless and until she either properly obtains either Oconee Center's written permission or the Court's leave to amend her Complaint. Fed. R. Civ. P. 15(a)(2).

## 2.    Equal Protection Clause Under the Georgia Constitution

Finally, the Court turns to Plaintiff's equal protection claim asserted under the Georgia Constitution. Like the United States Constitution, the Georgia Constitution guarantees, "No person shall be denied the equal protection of the laws." Ga. Const. art. I, § 1, ¶ II. And, as Plaintiff argues, the Equal Protection Clause under the Georgia Constitution is "coextensive with and substantially equivalent to" the Equal Protection Clause under the federal constitution, "so the analysis for an equal protection claim is the same whether it arises under state or federal law." [Doc. 7, p. 12 (citing *W.S. by Sonderman v. Ragsdale*, 540 F. Supp. 3d 1215, 1218 (N.D. Ga. 2021))]; *see also See Democratic Party of Ga., Inc. v. Perdue*, 707 S.E.2d 67, 74 (Ga. 2011). The federal equal protection clause "requires government entities to treat similarly situated people alike." *Campbell v. Rainbow City*, 434 F.3d 1306, 1313 (11th Cir. 2006).

Notwithstanding the same pleading fallacies that heavily plague Plaintiff's other claims (*i.e.*, her conclusory "the-defendant-unlawfully-harmed-me accusations," *McCullough*, 907 F.3d at 1333, and her shotgun pleading tactics, *Weiland*, 792 F.3d at 1322), her state equal protection claim can't be brought in federal court. Any claim based on the Georgia Constitution asserted in a federal court fails "as there is no equivalent to § 1983 under Georgia law" through which to assert the claim. *Timberson v. Butts Cnty.*, No. 5:21-cv-00291-TES, 2022 WL 17672624, at *9 (M.D. Ga. Dec. 14, 2022) (citing *Howard v. Miller*, 476 S.E.2d 636 (Ga. Ct. App. 1996) ("We have no equivalent to

42 U.S.C. § 1983, which gives a claim against a state [actor] for certain unconstitutional acts."")); *see also Lange v. Houston Cnty.*, 499 F. Supp. 3d 1258, 1281 (M.D. Ga. 2020) (quoting same).

Moreover, under the Georgia Constitution, state sovereign immunity is extended to governmental departments and agencies unless that immunity is specifically waived through an act of the Georgia General Assembly. Ga. Const. art. I, § IX(e); *Gilbert v. Richardson*, 452 S.E.2d 476, 478–79 (Ga. 1994) (holding that the doctrine of "governmental" or "sovereign" immunity protects governmental entities from lawsuits absent a legislative waiver); *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1141–42 (N.D. Ga. 2016) (". . . Georgia courts generally use the term 'official capacity' to refer to a claim against a Georgia official, which is treated as a claim against the state agency or department employing that official, and thus a claim against the state."); *cf. Ga. State Bd. of Pardons & Paroles v. Finch*, 605 S.E.2d 414, 416 (Ga. Ct. App. 2004) (citation omitted) (holding that employment decisions "necessarily require consideration of numerous factors and the exercise of deliberation and judgment" and are therefore "precisely the types of administrative action the discretionary function exception seeks to shield from judicial second-guessing[]"). Therefore, with respect to Plaintiff's equal protection claim under the Georgia Constitution, Oconee Center is entitled to state sovereign immunity as an agency actor of the State of Georgia. Plaintiff bears the burden of showing a waiver of this immunity on the part of Oconee Center. *See Sherin v.*

*Dep't of Hum. Res.*, 494 S.E.2d 518, 522 (Ga. Ct. App. 1997).

Whether Plaintiff characterizes Oconee Center's alleged actions as a deprivation of a right provided by the Georgia Constitution or as a tort, state sovereign immunity, as Oconee Center argues, is not subverted. [Doc. 5-1, p. 18 (citing *State Bd. of Educ. v. Drury*, 437 S.E.2d 290, 294 (Ga. 1993))]. "To prevail in tort over the [S]tate of Georgia, [a] [p]laintiff must clear the Georgia Tort Claims Act (GTCA"), which is the only conduit to hold the [S]tate [of Georgia] liable in tort actions." *Jones v. Ga. Dep't of Transp.*, No. 1:18-CV-130 (WLS), 2021 WL 5413059, at *11 (M.D. Ga. Oct. 12, 2021) (citing O.C.G.A. § 50-21-21(a). According to Oconee Center's Motion, Plaintiff has not complied with the ante litem notice of the GTCA's service provisions. [Doc. 5-1, p. 19 n.2]. In a similar vein, Plaintiff's Complaint doesn't even attempt to bring her state equal protection claim via the GTCA, nor do any of her allegations purport to show a waiver of Oconee Center's state sovereign immunity. *See Sherin*, 494 S.E.2d at 522; *see, e.g.*, [Doc. 1, p. 12]. Thus, Plaintiff's equal protection claim under the Georgia Constitution fails under the GTCA.

Despite this, Plaintiff's Complaint, once again alleges in the most conclusory manner that Oconee Center's "sexual harassment of and adverse employment actions against [her] on the basis of sex violate the Georgia Constitution's Equal Protection Clause." [Doc. 1, ¶ 77]. So, notwithstanding its shotgun-pleading nature and state sovereign immunity implications, Plaintiff's equal protection claim asserted under the

Georgia Constitution is nothing more than a legal conclusion not entitled to any presumption of truth. *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681). Therefore, it is **DISMISSED without prejudice** for failure to state a claim.

## CONCLUSION

Based on the foregoing, the Court **GRANTS in part** and **DENIES in part** Defendant Oconee Center Community Service Board's Motion to Dismiss [Doc. 5]. Specifically, as for Plaintiff's Title VII claims, her sexual harassment and hostile work environment claims are **DISMISSED with prejudice**, and her sex discrimination claim is **DISMISSED without prejudice**. Plaintiff's retaliation claim shall proceed for further factual development. As for Plaintiff's claim under the Georgia Whistleblower Act, it is **DISMISSED without prejudice**. And finally, her claims brought under the United States and Georgia Constitution's Equal Protection Clauses are both **DISMISSED without prejudice** for failure to state a claim.

**SO ORDERED**, this 3rd day of October, 2024.

*S/ Tilman E. Self, III*
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**